IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | |
|---|---|
| GARCIA FELIZ MALDONADO, | ) |
| | ) |
| **Plaintiff,** | ) |
| v. | ) Civil Action No. 5:21-00514 |
| | ) |
| MICHAEL D. CARVAJAL, *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

**PROPOSED FINDINGS AND RECOMMENDATION**

On September 13, 2021, Plaintiff, acting *pro se*, filed his Complaint in this matter claiming entitlement to relief pursuant to Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971).[1] (Document No. 1.) Plaintiff names the following as Defendants: (1) Michael D. Carvajal, Director of Bureau of Prisons; (2) J.C. Petrucc, Regional Director; (3) D.L. Young, Warden of FCI Beckley; and (4) J. Ball, Case Manager at FCI Beckley.[2] (Id., pp. 2 – 3.) First, Pliantiff complains that he was improperly transferred to a higher security level institution (FCI Beckley). (Id., pp. 6 - 7.) Plaintiff explains that in March 2021, Defendant Carvajal had "Plaintiff transferred from Moshannon Valley Correctional Facility, a low security prison located in Pennsylvania, to FCI Beckley, a high restricted security prison." (Id.) Plaintiff alleges that he has discussed with Defendants Carvajal, Petrucc, Young, and Ball, to no avail, his transfer back to a low security level prison. (Id.) Plaintiff

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

[2] Plaintiff filed supporting Affidavits that further identify Defendant Ball as "J. Ball." Accordingly, the Clerk is **DIRECTED** to revise the docket sheet to reflect "J. Ball, Case Manager" as a Defendant and terminate "Ball, Case Manager" as a defendant.

explains that he has "5 security points" and "Beckley FCI houses inmates with 15 up to 27 security points based upon their history of violence or their violent offenses." (Id.) Plaintiff alleges that he "faces a substantial risk of harm because his security points (5) require that he be in a low level prison facility with less dangerous prisoners." (Id.) Plaintiff asserts that Defendants are acting with deliberate indifference to his safety by failing to transfer him to a lower security level prison. (Id.)

Second, Plaintiff alleges that Defendant Ball subjected Plaintiff to unnecessary and excessive force in violation of his Eighth Amendment rights on August 17, 2021. (Id., p. 7.) Plaintiff explains that during an office visit, Defendant Ball threw Plaintiff against the wall, slammed Plaintiff's head against the wall, and choked Plaintiff to the point that he gasped for air. (Id.) Plaintiff contends that he suffered "extreme pain" as a result of Defendant Ball's actions. (Id.) Plaintiff alleges that Defendant Ball's use of unnecessary force was the result of Plaintiff's attempt to file an administrative remedy against Defendant Ball about his transfer to a low security level prison. (Id.)

Finally, Plaintiff alleges that Defendants Carvajal, Petrucc, and Young are acting with deliberate indifference to Plaintiff's health and safety by denying him "well balanced daily meals containing sufficient nutritional value." (Id., pp. 7 – 8.) Plaintiff alleges that he is at a substantial risk of serious harm because "the food from the kitchen daily is spoiled [and so] nutritionally deficient that it is effecting Plaintiff's health conditions." (Id.) Plaintiff requests monetary and injunctive relief. (Id., p. 9.)

In support of his Complaint, Plaintiff attaches a copy of Affidavits from Inmates Michael Rankins and Tyrone Cross. (Document Nos. 2 and 3.) In Inmate Rankins' Affidavit, Inmate Rankins states that he witnessed J. Ball use unnecessary force upon Plaintiff on August 17, 2021. (Document No. 2.) Specifically, Inmate Rankins states that J. Ball slammed Plaintiff to the wall

and began choking Plaintiff. (Id.) Finally, Inmate Rankins states that meals from the kitchen are "not well balanced daily meals containing sufficient nutritional value to preserve my health [and] the food from the kitchen is spoiled." (Id.) In Inmate Cross' Affidavit, Inmate Cross states that he witnessed J. Ball choke Plaintiff and slam his head into the wall. (Document No. 3.) Inmate Cross states that this "unnecessary excessive force was based upon [Plaintiff] telling J. Ball, Case Manager, he was going to file a grievance on him about his transfer to lesser security." (Id.)

On October 1, 2021, Plaintiff filed his Application to Proceed Without Prepayment of Fees and Costs. (Document No. 6.)

On December 27, 2021, Plaintiff filed his "Motion for Emergency Preliminary Injunction and Preliminary Hearing." (Document No. 7.) Pliantiff again complains that in March 2021, Defendant Carvajal had "Plaintiff transferred from Moshannon Valley Correctional Facility, a low security prison located in Pennsylvania, to FCI Beckley, a high restricted security prison that stays on institutional lockdowns for fights and violence." (Id.) Plaintiff explains that he has "five (5) security points" and he "is housed at FCI Beckley with inmates with 16 to 27 security points based upon their history of violence or their violent offenses." (Id.) Plaintiff alleges that he "faces a substantial risk of harm because his security points (5) require that he should have stayed housed in a low security facility with less dangerous prisoners and less prison restrictions." (Id.) Plaintiff alleges that he is likely to succeed upon the merits because "Defendants violated Plaintiff's due process and Eighth Amendment rights to the United States Constitution when they had him transferred from Moshannon Valley facility to Beckley FCI, a high restricted prison for medium custody inmates." (Id.) Next, Plaintiff alleges that Defendant Ball subjected Plaintiff to unnecessary and excessive force in violation of the Eighth Amendment. (Id.) Plaintiff concludes that he will likely suffer irreparable harm if the Court does not issue a preliminary injunction. (Id.)

3

Plaintiff claims he "is a vulnerable inmate and is at risk of irreparable harm by other inmates who are violent by their security points 16 to 27 security points." (Id.) Plaintiff concludes that the threat of harm he faces outweighs any harm that the preliminary injunction will cause to Defendants and the preliminary injunction will serve the public interest. (Id.) Therefore, Plaintiff requests that this Court issue a preliminary injunction requiring Defendants to transfer Plaintiff back to a low security level prison. (Id.)

## **THE STANDARD**

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court is required to screen each case in which a plaintiff seeks to proceed *in forma pauperis*, and must dismiss the case if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. Pursuant to 28 U.S.C. § 1915A, a similar screening is conducted where a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. This screening is done prior to consideration of an Application to Proceed Without Prepayment of Fees and Costs, and notwithstanding the payment of any filing fee. On screening, the Court must recommend dismissal of the case if the complaint is frivolous, malicious or fails to state a claim upon which relief can be granted. A "frivolous" complaint is one which is based upon an indisputably meritless legal theory. Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992). A "frivolous" claim lacks "an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831 - 32, 104 L.Ed.2d 338 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." Id., 490 U.S. at 327, 109 S.Ct. at 1833. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." Id., 490 U.S. at 327 - 328, 109 S.Ct. at 1833. A complaint therefore fails to state a claim upon which relief can be granted factually when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle

him to relief. With these standards in mind, the Court will assess Plaintiff's allegations in view of applicable law.

This Court is required to liberally construe *pro se* documents, holding them to a less stringent standard than those drafted by attorneys. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Loe v. Armistead, 582 F.2d 1291, 1295 (1978). Liberal construction, however, "does not require courts to construct arguments or theories for a *pro se* plaintiff because this would place a court in the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." Miller v. Jack, 2007 WL 2050409, at * 3 (N.D.W.Va. 2007)(citing Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir.1978)). Further, liberal construction does not require the "courts to conjure up questions never squarely presented to them." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). In other words, a court may not construct legal argument for a plaintiff. Small v. Endicott, 998 F.2d 411 (7th Cir.1993). Finally, the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a claim currently cognizable in a federal district court. Weller v. Department of Social Servs., 901 F.2d 387 (4th Cir.1990)). Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992); also see Goode v. Central Va. Legal Aide Society, Inc., 807 F.3d 619 (4th Cir. 2015).

## **DISCUSSION**

A Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 395 -97, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971);

See also Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)(extending Bivens to Eighth Amendment claims); Davis v. Passman, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979)(extending Bivens to allow citizen's recovery of damages resulting from a federal agent's violation of the Due Process Clause of the Fifth Amendment.) A Bivens action is the federal counterpart of an action under 42 U.S.C. § 1983. An action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof of causation between the official's conduct and the alleged injury is necessary for there to be liability. A plaintiff asserting a claim under Bivens must show the violation of a valid constitutional right by a person acting under color of federal law. However, Bivens claims are not actionable against the United States, federal agencies, or public officials acting in their official capacities. See FDIC v. Meyer, 510 U.S. 471, 475, 484-86, 114 S.Ct. 996, 127 L.Ed. 2d 308 (1994); Berger v. Pierce, 933 F.2d 393, 397 (6th Cir. 1991); Reingold v. Evers, 187 F.3d 348, 355 n. 7 (4th Cir. 1999).

1.  **Eighth Amendment:**

As a general matter, punishments prohibited under the Eighth Amendment include those that "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976)(quoting Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)). "It not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). Under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), rev'd on other grounds, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Thus, sentenced prisoners are entitled to reasonable protection from

6

harm at the hands of fellow inmates and prison officials under the Eighth Amendment. See Farmer v. Brennan, 511 U.S. 825, 832-34, 114 S.Ct. 1970, 1976-77, 128 L.Ed.2d 811 (1994); Trop v. Dulles, 356 U.S. 86, 102, 78 S.Ct. 590, 598-99, 2 L.Ed.2d 630 (1958); Woodhous v. Commonwealth of Virginia, 487 F.2d 889, 890 (4th Cir. 1973). Inmates' claims, therefore, that prison officials disregarded specific known risks to their health or safety are analyzed under the deliberate indifference standard of the Eighth Amendment. See Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir. 1987); Moore v. Winebrenner, 927 F.2d 1312, 1316 (4th Cir. 1991) cert. denied, 502 U.S. 828, 112 S.Ct. 97, 116 L.Ed.2d 68 (1991)(Stating that supervisory liability may be imposed where prison supervisors "obdurately," "wantonly," or "with deliberate indifference" fail to address a known pervasive risk of harm to an inmate's health or safety). To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297 - 99, 111 S.Ct. 2321, 2323 - 2325, 115 L.Ed.2d 271 (1991); also see King v. Rubenstein, 825 F.3d 206, 218 (4th Cir. 2016)(quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993))("[T]o make out a prima facie case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'"); Iko v. Shreve, 535 F.3d 225, 239 (4th Cir. 2008)(explaining that the above requirements "spring from the text of the amendment itself; absent intentionality, a condition imposed upon an inmate cannot properly be called 'punishment,' and absent severity, a punishment cannot be called 'cruel and unusual.'") To satisfy the objective component, Plaintiff must show that the challenged condition caused or constituted an extreme deprivation. De'Lonta v. Angelone, 330 F.3d 630, 634

7

(4th Cir. 2003). To demonstrate an "extreme deprivation," a plaintiff "must allege a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from [his] exposure to the challenged conditions." Odom v. South Caroline Dept. of Corrections, 349 F.3d 765, 770 (4th Cir. 2003); also see Wilson v. Seiter, 501 U.S. at 298, 111 S.Ct. at 2321(A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities."); White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1991)("In *Strickler*, we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.") To satisfy the subjective component, Plaintiff must demonstrate a "deliberate indifference" to his health and safety by defendants. In particular, Plaintiff must establish that each Defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, supra, 511 U.S. at 837, 114 S.Ct. at 1979. Plaintiff in this case must therefore allege and establish that each Defendant was aware of the excessive risk to Plaintiff's health or safety and each Defendant disregarded that risk.

      **(i)**     ***Failure to Protect:***

Plaintiff contends that Defendants violated his constitutional rights by transferring him to FCI Beckley, which is a higher security level prison. (Document No. 1.) Plaintiff explains that he has "5 security points" and "Beckley FCI houses inmates with 15 up to 27 security points based upon their history of violence or their violent offenses." (Id.) Plaintiff alleges that he "faces a substantial risk of harm because his security points (5) require that he be in a low prison facility

with less dangerous prisoners." (Id.) Plaintiff alleges that Defendants are acting with deliberate indifference to his safety by failing to transfer him to a lower security level prison. (Id.)

In order to establish a claim of failure to protect, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm" and that the prison officials acted with "'deliberate indifference' to inmate health or safety." Farmer, 511 U.S. at 834, 114 S.Ct. at 1977. First, Plaintiff fails to allege factual allegations supporting his conclusory claim that he is incarcerated under conditions imposing a substantial risk of serious harm. Plaintiff does not claim that he was assaulted, that his life was threatened by other inmates, or that his safety has been jeopardized during his stay at FCI Beckley. Second, Plaintiff fails to allege facts sufficient to satisfy the subjective component of deliberate indifference. To satisfy the subjective component, Plaintiff must allege that the defendant was consciousness of the risk of harm to him. See Farmer, supra, 511 U.S. at 840, 114 S.Ct. at 1980. Plaintiff, however, fails to allege that the Defendants knew of and disregarded an excessive risk to his health or safety. Again, Plaintiff's conclusory claim that he is at the risk of serious harm merely because he is incarcerated at a higher security level prison is insufficient. There is no allegation or indication that Plaintiff notified Defendants of a specific threat to his safety, and Defendants disregarded that threat. Furthermore, Plaintiff does not indicate that he has suffered any serious injury as a result of his transfer to FCI Beckley. Plaintiff's claim that prison officials should be liable due to the possibility that his transfer to FCI Beckley might endangered his safety is insufficient. See Henslee v. Lewis, 153 Fed. Appx. 178 (4th Cir. 2005)(Inmate did not state a cognizable claim under Section 1983 when he alleged that jail employee incited other inmates to attack him, but did not contend that any such attack occurred.); Langston v. Fleming, 38 F.3d 1213 (4th Cir. 1994)(*unpublished opinion*)(Prisoner failed to state a claim where he merely alleged that guards endangered his life by informing other

inmates that he was charged with rape). Finally, the verbal harassment or abuse of an inmate by prison guards, without more, is insufficient to state a constitutional deprivation. Ivey v. Wilson, 832 F.2d 950, 954-55 (6th Cir. 1987); also see Lindsey v. O'Connor, 2009 WL 1316087, at * 1 (3rd Cir. (Pa.))(holding that "[v]erbal harassment of a prisoner, although distasteful, does not violate the Eighth Amendment"); Purcell v. Coughlin, 790 F.2d 263, 265 (2nd Cir. 1986)(stating that name-calling does not rise to the level of a constitutional violation); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979)(finding that a sheriff's threats to hang a prisoner were insufficient to state a constitutional deprivation). Based on the foregoing, the undersigned finds that Plaintiff's above claim fails to state a cognizable claim under the Eighth Amendment for which relief can be granted.

**(ii)** *Inadequate Food:*

Next, Plaintiff contends that the conditions of his confinement are cruel and unusual because he is being denied "well balanced daily meals containing sufficient nutritional value." (Document No. 1, pp. 7 – 8.) Plaintiff alleges that he is at a substantial risk of serious harm because "the food from the kitchen daily is spoiled [and so] nutritionally deficient that it is effecting Plaintiff's health conditions." (Id.) Liberally construing Plaintiff's Complaint and assuming all facts as true, Plaintiff's allegations state a plausible Eighth Amendment violation. As stated above, prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish, 573 F.2d at 125; also see Lockamy v. Rodriguez, 402 Fed.Appx. 950, 951 (5th Cir. 2010)(absent an allegation of an injury as a result of missing meals, the deprivation of six meals during a 54 hour period was insufficient to state a claim); Laufgas v. Speziale, 263 Fed.Appx. 192, 198 (3rd Cir. 2008)("While prisoners are guaranteed a nutritionally adequate diet under the Eighth Amendment, there is no constitutional right to hot meals."); Evans v. Jabe, 2014 WL 202023, * 6 (E.D.Va. Jan. 17, 2014)(finding inmate failed to state a claim where he

complained for an incomplete or tardy breakfast on six occasions and there was no evidence of an injury); Ajaj v. United States, 479 F.Supp.2d 501, 547-48 (D.S.C. March 19, 2007)(finding inmate failed to state an Eighth Amendment claim where he complained he did not have a mattress for a number of days). By separate Order entered this day, the undersigned has granted Plaintiff's Application to Proceed Without Prepayment of Fees and Costs concerning the foregoing claim.

### *(iii)* *Excessive Force:*

In his Complaint, Plaintiff contends that Defendant Ball subjected Plaintiff to unnecessary and excessive force in violation of his Eighth Amendment rights on August 17, 2021. (Document No. 1, p. 7.) Plaintiff explains that during an office visit, Defendant Ball threw Plaintiff against the wall, slammed Plaintiff's head against the wall, and choked Plaintiff to the point that he gasped for air. (Id.) Plaintiff contends that he suffered "extreme pain" as a result of Defendant Ball's actions. (Id.) Plaintiff alleges that Defendant Ball's use of unnecessary force was the result of Plaintiff's attempt to file an administrative remedy against Defendant Ball about his transfer to a low security level prison. (Id.) Liberally construing Plaintiff's claims, the undersigned finds that Plaintiff has adequately alleged a of claim unnecessary and excessive force in violation of his Eighth Amendment rights. By separate Order entered this day, the undersigned has granted Plaintiff's Application to Proceed Without Prepayment of Fees and Costs concerning the foregoing claim.

**2.     Due Process:**

To determine whether an inmate retains a certain liberty interest, the Court must look to the nature of the claimed interest and determine whether the Due Process Clause applies. See Board of Regents v. Roth, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 2705-06, 33 L.Ed.2d 548 (1972). An inmate holds a protectable right in those interests to which he has a legitimate claim of entitlement.

Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979)(quoting Roth, 408 U.S. at 577, 92 S.Ct. 2709). In Gaston, the Fourth Circuit determined that an inmate possesses a claim of entitlement in those interests "which were not taken away expressly or by implication, in the original sentence to confinement." Id. at 343. The Supreme Court held in Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), that in order to show the deprivation of a liberty interest protected by the Due Process Clause, an inmate must show either that: (1) the conditions exceed the sentence imposed in such an unexpected manner as to give rise to protection by the Due Process Clause or (2) the confinement creates an atypical or significant hardship in relation to the ordinary incidents of prison life. Id., 515 U.S. at 484, 115 S.Ct. at 2300 (citations omitted). Absent allegations indicating that there has been a restraint upon the inmate's freedom which imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," the inmate's claims have no merit. Id.

Plaintiff contends that his custody classification requires his placement in a low security level prison, but Defendants have improperly transferred him to a more secure prison. Plaintiff complains that being placed in a higher level security prison subjects him to more restrictions, "lockdowns," and incarceration with more dangerous prisoners. Plaintiff concludes that Defendants denied him due process and failed to follow policy. Liberally construing Plaintiff's Complaint and assuming all facts as true, Plaintiff's allegations do not establish a Due Process violation. Failure of prison officials to follow their own internal policies, procedures or regulations alone is insufficient to make out a due process violation. See Myers v. Klevenhager, 97 F.3d 91, 94 (5th Cir 1996); Giovanni v. Lynn, 48 F.3d 908, 913 (5th Cir. 1995), cert. denied, 516 U.S. 860, 116 S.Ct. 167, 133 L.Ed.2d 109 (1995). The undersigned notes additionally that the Supreme Court

has indicated that prison regulations are not designed to confer rights on or benefits to inmates. Rather, they are primarily designed to guide correctional officials in the administration of prisons. Sandin v. Conner, 515 U.S. 472, 481- 482, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). It is well recognized that prisoners have no constitutional or inherent right to receive a particular security or custody classification. See Moody v. Daggett, 429 U.S. 78, 88, n. 9, 97 S.Ct. 274, 279, n. 9, 50 L.Ed.2d 236 (1976)("[N]o due process protections were required upon the discretionary transfer of state prisoners to a substantially less agreeable prison, even where that transfer visited a 'grievous loss' upon the inmate. The same is true of prisoner classification and eligibility for rehabilitative programs in the federal system."). The Fourth Circuit has specifically stated that "[t]he federal constitution itself vests no liberty interest in inmates retaining or receiving any particular security or custody status '[a]s long as the [challenged] conditions or degree of confinement . . . is within the sentence imposed . . . And is not otherwise violative of the Constitution." Slezak v. Evatt, 21 F.3d 590, 594 (4th Cir. 1994), cert. denied, 513 U.S. 889, 115 S.Ct. 235, 130 L.Ed.2d 158 (1994); see also Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995)(finding that "a prison inmate does not have a protectable liberty or property interest in his custodial classification and an inmate's disagreement with a classification is insufficient to establish a constitutional violation"); Posey v. Dewalt, 86 F. Supp.2d 565, 571 (E.D.Va. 1999), appeal dismissed by, 215 F.3d 1320 (4th Cir. 2000), cert. denied, 531 U.S. 971, 121 S.Ct. 411, 148 L.Ed. 318 (2000)(stating that "[p]ut simply, petitioner has not stated a due process claim because he has no protected liberty interest in a particular classification within BOP"). Finally, Plaintiff does not set forth any specific conditions of his confinement that were atypical and created a significant hardship as compared to ordinary prison life. Additionally, nothing in the record indicates that Plaintiff's conditions of confinement at FCI Beckley are atypical or resulted in a

significant hardship.³ Plaintiff's conclusory allegation that he is subjected to "an atypical and significant hardship in relation to the ordinary incidents of prison life" is insufficient. To the extent that Plaintiff alleges a liberty interest in remaining at Moshannon Valley Correctional Facility or in a low security prison, the undersigned finds that Plaintiff's claim is without merit. The transfer of inmates to different facilities is a matter clearly contemplated by Plaintiff's original sentence. See Gaston, 946 F.2d at 343 (To safely and efficiently run the prison, prison officials maintain broad discretion over an inmate's "location, variations of daily routines, changes in conditions of confinement (including administrative segregation), and the denial of privileges"); Hatch v. District of Columbia, 184 F.3d. 846, 855 (D.C. Cir. 1999)(stating that "the transfer of an inmate to less amenable and more restrictive quarter for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence"); and Gholson v. Murry, 953 F. Supp. 709, 716 (E.D.Va. 1997)(finding that the denial of work opportunities and certain education programs did not impose an atypical and significant hardship on inmates placed in segregation in relation to the ordinary incidents of prison life). Accordingly, the undersigned finds that Plaintiff has failed to set forth a cognizable due process claim.

3. **Motion for Emergency Preliminary Injunction and Preliminary Hearing:**

In his "Motion for Emergency Preliminary Injunction and Preliminary Hearing," Plaintiff

---

³ In Beverati, the Fourth Circuit determined that the following conditions in administrative segregation did not constitute atypical and significant hardship in comparison to general population:
> ...cells were infested with vermin; were smeared with human feces and urine; and were flooded with water from a leak in the toilet on the floor above. And, [the inmates] assert, they were forced to use their clothing and shampoo to clean the cells. In addition, Inmates maintain that their cells were unbearably hot and that the food they received was cold. Furthermore, Van Aelst submitted an affidavit indicating that those assigned to administrative segregation did not receive clean clothing, linen, or bedding as often as required by the regulations governing administrative segregation; that they were permitted to leave their cells three to four times per week, rather than seven, and that no outside recreation was permitted; that there were no educational or religious services available; and that food was served in considerably smaller portions.

*Beverati v. Smith*, 120 F.3d 500, 502 (4ᵗʰ Cir. 1997).

requests that this Court require Defendants to transfer him to a low security level prison. (Document No. 7.) In support, Pliantiff again complains that in March 2021, Defendant Carvajal had "Plaintiff transferred from Moshannon Valley Correctional Facility, a low security prison located in Pennsylvania, to FCI Beckley, a high restricted security prison that stays on institution lockdowns for fights and violence." (Id.) Plaintiff explains that he has "five (5) security points" and he "is housed at FCI Beckley with inmates with 16 to 27 security points based upon their history of violence or their violent offense." (Id.) Plaintiff alleges that he "faces a substantial risk of harm because his security points (5) require that he should have stayed housed in a low security facility with less dangerous prisoners and less prison restrictions." (Id.) Plaintiff alleges that he is likely to succeed upon the merits because "Defendants violated Plaintiff's due process and Eighth Amendment rights to the United States Constitution when they had him transferred from Moshannon Valley facility to Beckley FCI a high restricted prison for medium custody inmates." (Id.)

Rule 65(b) of the Federal Rules of Civil Procedure sets forth the limited circumstances under which a temporary restraining order can be granted as follows:

> A temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required.

Fed.R. Civ. P. 65(b). Rule 65(a) provides that a court may issue a preliminary injunction only on notice to the adverse party. Fed. R. Civ. P. 65(a). The Fourth Circuit explained the different functions of temporary restraining orders and preliminary injunctions in Hoechst Diafoil Company v. Nan Ya Plastics Corporation, 174 F.3d 411, 422 (4th Cir. 1999), as follows:

15

> While a preliminary injunction preserves the status quo pending a final trial on the merits, a temporary restraining order is intended to preserve the status quo only until a preliminary injunction hearing can be held: '[U]nder federal law [temporary restraining orders] should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer.' Granny Goose, 415 U.S. at 439.

"A plaintiff seeking a preliminary injunction *must* establish that [1] he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20, 129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008)(emphasis added). [A]ll four requirements must be satisfied." The Real Truth About Obama, Inc. v. Federal Election Commission., 575 F.3d 342, 346 (4th Cir. 2009), *judgment vacated on other grounds*, 559 U.S. 1089, 130 S.Ct. 2371, 176 L.Ed.2d 764 (2010).[4] The Fourth Circuit has explains that "[b]ecause a preliminary injunction affords, on a temporary basis, the relief that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate by 'a clear showing' that, among other things, it is likely to succeed on the merits at trial." Id. Furthermore, the Supreme Court "rejected a standard that allowed the plaintiff to demonstrate only a 'possibility' of irreparable harm because that standard was 'inconsistent with our characterization of injunctive relief as an extraordinary remedy that may be awarded upon a clear showing that the plaintiff is entitled to such relief." Id.(citing Winters, 55 U.S. at 22, 129 S.Ct. at 375-76.) Thus, a Court may not issue a preliminary injunction or temporary restraining order "simply to eliminate a possibility of a remote future injury." Kates v. Packer, 2014 WL 1218905, * 3 (M.D.Pa. March

---

[4] The United States Supreme Court vacated the original decision in *Real Truth* for further consideration in light of *Citizens United v. Federal Election Commission*, 558 U.S. 310, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010). *The Real Truth About Obama, Inc. v. Federal Election Commission*, 559 U.S. 1089, 130 S.Ct. 2371, 176 L.Ed.2d 764 (2010). The Fourth Circuit, however, reissued its opinion on Parts I and II of its opinion. *The Real Truth About Obama, Inc. v. Federal Election Commission*, 607 F.3d 355 (4th Cir. 2010).

24, 2014)(quoting Holiday Inns of America, Inc. v. B&B Corp., 409 F.2d 614, 618 *3rd Cir. 1969)("The requisite for injunctive relief has been characterized as a 'clear showing of immediate irreparable injury,' or a 'presently existing actual threat.'"). The irreparable harm alleged by movant must be "neither remote nor speculative, but actual and imminent." Direx Israel, Ltd. v. Breakthrough Medical Corp., 952 F.2d 802, 812 (4th Cir. 1991), *abrogation recognized on other grounds*, Sarsour v. Trump, 245 F.Supp.3d 719, n. 6 (4th Cir. 2017); also see Kates, 2014 WL 1218905 at * 3(The irreparable harm must be "actual and imminent, not merely speculative.") As the Fourth Circuit has explained, the Court is no longer required to balance the irreparable harm to the respective parties. Real Truth, 575 F.3d at 347. Rather the movant must make a clear showing that he is likely to be irreparably harmed, and the Court must "pay *particular regard* for the public consequences in employing the extraordinary remedies of an injunction." Id.(citations omitted).

     For the reasons fully explained above, the undersigned has recommended that Plaintiff's Complaint be dismissed as to Plaintiff's claim challenging his placement in a higher security level prison based upon alleged violations of the Eighth Amendment and the Due Process Clause. Therefore, the undersigned finds that Plaintiff's request for injunctive relief should be denied as he cannot establish that he is likely to succeed on the merits of these claims. Furthermore, the Court lacks authority to grant Plaintiff's request for injunctive relief. Plaintiff requests that this Court enter an order transferring him to a different prison facility. The classification and transfer of federal prisoners falls within the broad discretion of the Bureau of Prisons and Courts lack authority to order that a prisoner be confined to any particular institution. See 18 U.S.C. § 3621(b)(the BOP shall designate the place of an inmate's confinement); also see McKune v. Lile, 536 U.S. 24, 40, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002)("It is well settled that the decision where

17

to house inmates is at the core of prison administrators'' expertise."); <u>Meachum v. Farno</u>, 427 U.S. 215, 225, 96 S.Ct. 2532, 2539, 49 L.Ed.2d 451 (1976)(the transfer of a convicted and sentenced inmate is within the sound discretion of the BOP); <u>United States v. Williams</u>, 65 F.3d 301, 307 (2nd Cir. 1995)("A sentencing court has no authority to order that a convicted defendant be confined in a particular facility, much less placed in a particular treatment program; those decisions are within the sole discretion of the Bureau of Prisons."); <u>Milhouse v. O'Brien</u>, 2014 WL 12521373, (N.D.W.Va. Feb. 25, 2014)(denying plaintiff's motion for temporary or preliminary injunction where plaintiff failed to satisfy the first *Winter's* factor because he could not succeed on his request for a transfer to a different prison facility); <u>Hinton v. Federal Bureau of Prisons</u>, 2009 WL 3347158, * 4 n. 5 (S.D.W.Va. Oct. 14, 2009)(J. Johnston)("Inmates . . . have no constitutional right to be housed in any particular prison or jail, regardless of security classification."). Based upon the foregoing, the undersigned respectfully recommends that Plaintiff's above Motion (Document No. 7) be denied.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **DISMISS** Plaintiff's Complaint (Document No. 1) as to his claim that Defendants violated the Eighth Amendment and the Due Process Clause by transferring him to a higher security level prison, **DENY** Plaintiff's "Motion for Emergency Preliminary Injunction and Preliminary Hearing" (Document No. 7), and **REFER** this matter back to the undersigned for further proceedings on Plaintiff's claim that (1) Defendant Ball subjected Pliantiff to excessive force in violation of the Eighth Amendment; and (2) Defendants Carvajal, Petrucc, and Young are denying Plaintiff a nutritionally adequate diet in

violation of the Eighth Amendment.[5]

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Frank W. Volk. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Volk and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*.

Date: February 4, 2022.



Omar J. Aboulhosn
United States Magistrate Judge

---

[5] By separate Order entered this day, the undersigned has grant Plaintiff's Application to Proceed Without Prepayment of Fees and Costs as to Plaintiff's excessive force and inadequate diet claims under the Eighth Amendment.